UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEALED,<br>    Plaintiffs,<br><br><br>    v.<br><br>SEALED,<br>    Defendants. | § § § § § § § § § § § § § | Civil Action No.<br>H-13-1081<br><br>FILED *IN CAMERA*<br>AND UNDER SEAL<br>Pursuant to<br>31 U.S.C. §3730(b)(2) |

United States District Court
Southern District of Texas

MAY 10 2013

Clerk of Court

# FILED UNDER SEAL

(ATTENTION SEAL CLERK)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATES OF TEXAS, COLORADO, FLORIDA, GEORGIA, ILLINOIS, LOUISIANA, MARYLAND, NEW JERSEY, NORTH CAROLINA, and OKLAHOMA; COMMONWEALTH OF VIRGINIA; STATE OF WASHINGTON; and THE DISTRICT OF COLUMBIA, *ex rel.* | § § § § § § § § § § § | Civil Action No. H-13-1081 |
| MICHAEL VAUGHN, THEODORE FREEMAN, WILLIAM MCKENNA, and WESLEY STAFFORD, Relators, Plaintiffs, | § § § § § | **FILED *IN CAMERA* AND UNDER SEAL** Pursuant to 31 U.S.C. §3730(b)(2) |
| v. | § § | |
| UNITED BIOLOGICS, LLC, d/b/a UNITED ALLERGY SERVICES f/k/a UNITED ALLERGY LABS; SMART ALLERGY LABS; and ALLERGY PRACTICE CONSULTING GROUP d/b/a ALLERTA CORP., Defendants. | § § § § § § § | Demand for a Jury Trial |

**FIRST AMENDED FALSE CLAIMS ACT COMPLAINT**

I.
**INTRODUCTION**

1.  Relators Michael P. Vaughn, Theodore Monroe Freeman, William R. McKenna, and Wesley Warren Stafford bring this action on behalf of the United States of America and the States of Texas, Colorado, Florida, Georgia, Illinois, Louisiana, Maryland, New Jersey, North Carolina, and Oklahoma; the Commonwealth of Virginia, the State of Washington; and the District of Columbia, (collectively "the States,") and on their own behalf (U.S., the States, and Relators, collectively "Plaintiffs"), against Defendants United Biologics, LLC d/b/a United

- 1 -

Allergy Services and f/k/a/ United Allergy Labs, Smart Allergy Labs, and Allergy Practice Consulting Group d/b/a Allerta Corp.

2. Each Relator is a board certified allergist licensed to practice medicine in Texas. Through their medical practices and their involvement in various medical societies, the Relators learned of Defendants' illegal schemes.

3. The Defendants market, own and/or operate allergy centers ("Remote Allergy Centers") placed in offices and clinics of primary care physicians and other physicians (collectively "PCPs") nationwide. Defendants contract with PCPs to provide allergy testing and treatment services to the PCPs' patients. These services are provided by employees and agents of Defendants within a designated space at the PCPs' offices. Many of the PCPs' patients receive healthcare coverage through the States' Medicaid programs, the federal Medicare and Tricare/Champus programs, and other federally-funded government healthcare programs ("Government Healthcare Programs.")

4. Defendants are engaged in at least three illegal schemes that violate the federal False Claims Act and the States' False Claims Acts. First, Defendants provide PCPs with illegal kickbacks, inducing PCPs to contract with the Defendants to set up Remote Allergy Centers in the PCPs' offices or clinics, and inducing the PCPs to refer patients to Defendants' Remote Allergy Centers. Second, the Defendants provide or cause to be provided unnecessary medical treatment through the provision of allergen immunotherapy and improperly bill, or cause to be billed, Government Healthcare Providers for these treatments. Third, Defendants improperly bill Government Healthcare Providers or cause Government Healthcare Providers to be improperly billed for the "services" they provide.

5. This action is filed as a result of the Defendants' violations of 31 U.S.C. §§3729 *et seq.* (the "federal False Claims Act" or the "FCA"), 42 U.S.C. §1320a-7b (the "federal Anti-Kickback Statute" or "AKS") and the Texas Medicaid Fraud Prevention Act, Texas Human Resource Code §§36.001 *et seq.*; the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-305 *et seq.*; the Florida False Claims Act, FLA. STAT. Ch. 68.081 *et seq.*; the Georgia False Medicaid Claims Act, GA. CODE ANN. §§49-4-168.1 *et seq.*; the Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. §175/1 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. §§46:439.1 *et seq.*; the Maryland False Claims Act, MD. Health-General Code §2-601 – 2-611 *et seq.*; the New Jersey State False Claims Act, N.J. STAT. §2A:32C-1 *et seq.*; the North Carolina False Claims Act, N.C. GEN. STAT. §§1-605 – 1-618 *et seq.*; the Oklahoma Medicaid False Claims Act, OKLA. STAT. tit. 63 §§5053.1 *et seq.*; the Washington State, RCW 74.09.210 *et seq.*; the Virginia Fraud Against Taxpayers Act, Code of Virginia §8.01-216.1 *et seq.*; and the District of Columbia False Claims Act, D.C. CODE ANN., 2-308.14 *et seq.*; collectively, the "State FCAs").

6. As a direct result of Defendants' improper practices in violation of the FCA, AKS, and the State FCAs, the U.S. and States' treasuries have been damaged in a substantial amount yet to be determined.

7. Plaintiffs seek treble damages, civil penalties, and other relief arising from Defendants' false claims made in violation the federal FCA and Defendants' unlawful acts made in violation of the State FCAs.

8. Relators possess direct and independent knowledge about Defendants' wrongful acts against the federal and state governments by submitting false claims and committing other unlawful acts with respect to the Government Healthcare Programs. If a public disclosure of

Relators' allegations was made prior to filing this suit, which Relators deny, Relators are nevertheless the original source of any such allegations or disclosures.

9. Prior to filing this lawsuit, on April 4, 2013, Relators voluntarily disclosed substantially all material evidence and information the Relators possess by serving a Disclosure Statement and exhibits on the required governmental officials.

## II.
## PARTIES

### A. Plaintiffs

10. Relators bring this action on behalf of the United States and the States, and themselves pursuant to the FCA and the State FCAs.

11. Dr. Vaughn is a United States citizen residing in San Antonio, Texas where he practices medicine with Alamo Asthma & Allergy, and Alamo Asthma & Allergy Associates, P.A since 2004. In the course of his work as a board-certified allergist, Dr. Vaughn has discovered evidence of the illegal schemes discussed herein.

12. Dr. Freeman is a United States citizen residing in San Antonio, Texas where he practices medicine with the San Antonio Asthma and Allergy Clinic. In the course of his work as a board-certified allergist and a member of the Texas Allergy Asthma and Immunology Society ("TAAIS") board, as well as his work as an expert witness on behalf of Jean-Denis Boucher, M.D. in a lawsuit filed against him by UAL, Dr. Freeman discovered the wrongful and illegal schemes discussed herein.

13. Dr. McKenna is a United States citizen residing in Harlingen, Texas where he practices with the professional association, William R. McKenna, M.D., P.A. In the course of his work as a board-certified allergist, involvement with the TAAIS, and work with the Texas Medical Board, Dr. McKenna discovered the wrongful and illegal schemes discussed herein.

14. Dr. Stafford is a United States citizen residing in Corpus Christi, Texas where he practices with the Allergy and Asthma Center of Corpus Christi. In the course of his work as a board-certified allergist and his involvement with TAAIS and TMB, Dr. Stafford discovered the wrongful and illegal schemes discussed herein.

**B.   Defendants**

15. Defendant United Biologics, LLC f/k/a United Allergy Labs and d/b/a United Allergy Services ("UAL") is a Delaware Limited Liability Corporation authorized to do business in Texas. UAL contracts with PCPs to provide allergy testing and treatment services to the PCPs' patients. These services are provided by UAL employees and agents within a designated space at the PCPs' offices. UAL is in business across the country, including the following states which have state false claims acts: Texas, Colorado, Florida, Georgia, Illinois, Louisiana, Maryland, New Jersey, North Carolina, Oklahoma, Virginia, Washington, and the District of Columbia. UAL operates throughout Texas and this District.

16. Defendant Smart Allergy Labs, LLC ("Smart Allergy" or "SAL") is a Texas Limited Liability Corporation. Like UAL, Smart Allergy contracts with PCPs across Texas to provide allergy testing and treatment services to the PCPs' patients. These services are provided by Smart Allergy employees and agents within a designated space at the PCPs' offices. Smart Allergy operates throughout Texas and this District.

17. Defendant Allergy Practice Consulting Group, Inc. d/b/a Allerta Corp. ("Allerta") is a Delaware for-profit corporation authorized to do business in Texas. Allerta contracts with PCPs across Texas to provide allergy testing and treatment services to the PCPs' patients. These services are provided by Allerta employees and agents within a designated space at the PCPs' offices. Allerta operates throughout Texas and this District.

# III.
# JURISDICTION

18. This action arises under the FCA, 31 U.S.C. §§3729 *et seq.*, and the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1345.

19. This Court also has supplemental jurisdiction over the claims brought by Relators on behalf of themselves and on behalf of the States under the State FCAs pursuant to 28 U.S.C. §1367(a) and 31 U.S.C. §3732(b).

# IV.
# VENUE

20. Venue in this district is proper pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1391(b) and (c) since one or more of the Defendants transact business in this district and/or one or more of the acts at issue occurred in this district.

# VII.
# FACTUAL ALLEGATIONS

### A. Defendants' AKS Violations

21. Defendants each individually engaged in a scheme to pay kickbacks to PCPs in exchange for patient referrals for allergy testing and treatments.

22. Defendants market their scheme to PCPs to provide "in-office" allergy testing and treatment through the use of a Remote Allergy Center. The scheme requires the PCPs to provide a dedicated room and the Defendants to provide technicians and equipment. The PCPs then refer their patients to be tested for allergies by Defendants' technicians. At one time, UAL also provided billing services.

23. Most of the Defendants have their technicians perform a skin test to determine what allergens the patient reacts to; Allerta now utilizes a blood test but previously also used a skin test.

24. The Defendants' technicians interpret the test results, with no input from the PCPs. In some instances, Smart Allergy technicians photograph the skin test results and send them to an unknown location and to an unknown professional for interpretation and diagnosis. The PCPs bill for the testing and interpretation, as if the PCPs or their employees had performed the service, when in fact the services were performed by employees of Defendants without any supervision or involvement by the PCPs.

25. When patients are determined to have allergic sensitivities, immunotherapy serums are then provided by Defendants and Defendant's employees provide the PCPs specific instructions on how to bill for the service.

26. In most cases, the Defendants do not administer the majority of the injections. Instead, for example, according to UAL's protocols, the Defendants' technicians train patients to administer the injections themselves and send the patients home with the immunotherapy serum following their third injection. Additionally, some Defendants provide sublingual immunotherapy instead of subcutaneous injections, but then bill or cause the PCPs to bill for immunotherapy injections.

27. Regardless of where the immunotherapy is provided, the PCPs assume responsibility for the delivery of medication of unknown type or quantity.

28. In exchange for the services provided by Defendants to the patients, the PCPs bill Government Healthcare Programs for these services as if they provided them, and then split the fee received with the Defendants.

29. By providing the medical services of skin testing and immunotherapy preparations without the required level of physician supervision to meet the applicable standards

of care, and then splitting the fees with the PCPs, Defendants are engaged in a clear kickback scheme in violation of the AKS, FCA, and the State FCAs.

### B. Unnecessary Medical Services

30. Despite what the contracts purport to require, Relators have received information that Defendants recommend immunotherapy to more than 50% of patients who experience a skin reaction to the allergy testing. For UAL, between 60-70% of all patients tested are prescribed immunotherapy. When compared to the much lower national average of immunotherapy use by allergists, this extremely high percentage of patients who are prescribed immunotherapy at Defendants' Remote Allergy Centers suggests gross abuse of a potentially dangerous therapeutic option.

31. In addition to ignoring the recommended 3-mm cut-off value for a positive skin test interpretation as advocated by the JTF practice parameter "Allergy Diagnostic Testing," UAL also ignores the recommended 3-mm cut-off value clearly printed on the skin test grading ruler provided by the manufacturer (Hollister-Steir) for the "ComforTen" skin test device they have used. UAL's profit motivated decision to use diagnostic skin test grading criteria below the standards of care (by designating reactivities as small as 1-mm larger than the negative control as positive reactions) has falsely identified some patients as allergic and has also led to the inclusion of potentially dangerous false positive allergens in immunotherapy. In addition, UAL's choice to lower the threshold for the diagnosis of a positive skin test reaction has an additional financial benefit; since mold allergens are typically isolated from other allergens in a separate immunotherapy treatment kit, each time a false positive mold sensitivity is identified, a second treatment set becomes necessary and resultantly, the billing for the number of required immunotherapy doses doubles.

32. By indiscriminately testing for and prescribing immunotherapy for patients who do not need it, and violating the standards of care in the testing and prescribing of immunotherapy, Defendants are providing unnecessary and improper medical services. These services place patients at risk of harm, improperly cost Government Healthcare Programs vast sums of money, and in some cases of immunotherapy shortages, affect the availability of sufficient allergens for other people who actually need them.

C. **Improper Billings for the Mixing and Dilutions of Allergens**

33. Medicare and Medicaid impose strict restriction on the billing of allergen immunotherapy.

34. Once a patient is determined to be an appropriate candidate for immunotherapy, the physician should prescribe the appropriate serum for the injections, determining the appropriate mix of antigens. Once the serum is received by the physician, the physician should dilute the serum to the appropriate level to begin the immunotherapy. Generally, the standard of care requires several different levels of dilutions, with the concentration of the allergens increasing, until the maintenance dose level is reached.

35. According to Medicare guidelines, a physician can bill only once for the creation and dilution of the serum. Should it become apparent during the course of the immunotherapy that additional dilutions are necessary to achieve the best medical results, such dilutions should be made. However, Medicare prohibits a physician from billing for any subsequent dilutions.

36. Certain states also impose specific restrictions on the billing of mixing allergens. In blatant disregard for these requirements, UAL bills, and/or causes the PCPs to bill, Government Healthcare Programs multiple times for the same treatment set. UAL, and upon information and belief the other Defendants, mix treatment sets, bill, and/or cause PCPs to bill,

for them, and then on multiple subsequent days bill for the creation of the same treatment sets. This wrongful practice greatly increases the Defendants' revenue and the revenue of the PCPs with whom they contract and violates the billing requirements of the Government Healthcare Programs.

**D.     Improper Billing of SLIT**

37.     As discussed above, SLIT is an allergy treatment which involves the placement of liquid allergens underneath the patients' tongues.

38.     This treatment cannot be billed to any Government Healthcare Program or to a third party insurance carrier as it is experimental and there is no appropriate CPT code.

39.     Despite this explicit prohibition, at least until sometime in 2011[1], Defendant UAL regularly ordered SLIT for individuals while billing, and/or causing the PCPs to bill, Government Healthcare Programs and insurance carriers, as though the individuals were receiving covered immunotherapy injections, rather than the SLIT therapy they actually receive.

40.     The wrongful billing for SLIT treatment (which is billed as if immunotherapy injections were provided) to Government Healthcare Programs by or caused by Defendants, violates the FCA and the state FCAs.

## VIII.
## COUNTS AGAINST DEFENDANTS

**Count 1:     Violations of the FCA by All Defendants (pursuant to 31 U.S.C. 3729(a)(1) and 31 U.S.C. 3729(a)(2) [for violations before June 7, 2008] and pursuant to 31 U.S.C. 3729(a)(1)(A) and 31 U.S.C. 3729(a)(1)(B) [for violations on or after June 7, 2008]**

41.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729 *et seq.*, as amended.

---

[1] During 2011, UAL switched from SLIT to home immunotherapy.

- 10 -

42. By virtue of the acts described herein, Defendants knowingly presented, or caused the PCPs to present, to the United States under the Government Healthcare Programs, false claims for payment or approval, and made, used and caused to be made and used false records and statements material to false claims as a result of their kickback scheme, their provision of unnecessary medical services, their improper billing of the mixing and dilutions of allergens and their improper billing of SLIT, as described herein.

### Count 2: <u>Violations of the Anti-Kickback Statute, 42 U.S.C. §1320a-7b, Against All Defendants</u>

118. Each claim for reimbursement for Defendants' services represents a false claim for payment because each allergy test and immunotherapy submitted for payment by a PCP for services provided in a Remote Allergy Center carried with it a false certification by the healthcare provider that the service it provided complied with the Anti-Kickback Statute.

119. Defendants have violated the Anti-Kickback Statute by implementing programs that provided a direct and substantial financial incentive to induce PCPs to use Defendants' allergy services.

120. Unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants and in reliance on the truthfulness and accuracy of Defendants' certifications, the United States paid and continues to pay on the claims that would not be paid but for Defendants' wrongful actions and omissions.

121. As violations of the Anti-Kickback Statute, the material misrepresentations made by Defendants to induce the use of their services constitute false claims and statements under 31 U.S.C. §3729 *et seq.* pursuant to 42 U.S.C. §1320a-7b(g).

**Count 3:** <u>Violations of the Texas Medicaid Fraud Prevention Law, TEX. HUM. RES. CODE §§36.001 *et seq.*, Against Defendants</u>

**122.** The State of Texas was unaware of Defendants' wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**123.** As a result of Defendants' violations of TEX. HUM. RES. CODE §36.002, the State of Texas has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 4:** <u>Violations of the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-305 *et seq.* Against UAL</u>

**124.** The State of Colorado was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection with UAL's wrongful and illegal practices.

**125.** As a result of UAL's violations of C.R.S. 25.5-4-305(1), the State of Colorado has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 5:** <u>Violations of the Florida False Claims Act, Fla. Stat. §68.082(2)(a), (b), *et seq.*, Against UAL</u>

**126.** The State of Florida, by and through the Florida Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**127.** As a result of UAL's violations of FLA. STAT. §68.082(2), the State of Florida has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 6:** <u>Violations of the Georgia False Medicaid Claims Act, GA. CODE. ANN. §§49-4-168 *et seq.*, Against UAL</u>

**128.** The State of Georgia, by and through the Georgia Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**129.** As a result of UAL's violations of GA. CODE ANN. §49-4-168.1(a), the State of Georgia has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 7:** **Violations of the Illinois False Claims Act, 740 ILL. COMP. STAT. §175/1, *et seq.*, Against UAL**

**130.** The State of Illinois, by and through the Illinois Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**131.** As a result of UAL's violations of 740 ILCS 175/3(a), the State of Illinois has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 8:** **Violations of the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. §46:437.1 *et seq.*, Against UAL**

**132.** The State of Louisiana, by and through the Louisiana Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**133.** As a result of UAL's violations of LA. REV. STAT. ANN. §46:438.3, the State of Louisiana has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 9:** **Violations of the Maryland False Claims Act, MD. Health-General Code §2-601 *et seq.*, Against UAL**

**134.** The State of Maryland, by and through the Maryland Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**135.** As a result of UAL's violations of MD. Health-General Code §2-602(a), the State of Maryland has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 10:** <u>Violations of the New Jersey False Claims Act, N.J. STAT. Ann. §§2A:32C-1 *et seq.*, Against UAL</u>

**136.** The State of New Jersey, by and through the New Jersey Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**137.** As a result of UAL's violations of N.J. STAT. ANN. §2A:32C-3, the State of New Jersey has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 11:** <u>Violations of the North Carolina False Claims Act, N.C. GEN. STAT. §§1-605, *et seq.*, Against UAL</u>

**138.** The State of North Carolina, by and through the North Carolina Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**139.** As a result of UAL's violations of N.C. GEN. STAT. §1-607(a), the State of North Carolina has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 12:** <u>Violations of the Oklahoma Medicaid False Claims Act, OKLA. STAT. tit. 63 §§5053.1*et seq.*, Against UAL</u>

**140.** The State of Oklahoma, by and through the Oklahoma Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims

**141.** As a result of UAL's violations of OKLA. STAT. tit. 63 §5053.1(B), the State of Oklahoma has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 13:** <u>Violations of the Virginia Fraud Against Taxpayers Act, VA. CODE ANN. §§8.01-216.1 *et seq.*, Against UAL</u>

**142.** The Commonwealth of Virginia, by and through the Virginia Medicaid program and other Commonwealth health care programs, was unaware of UAL's wrongful and illegal

practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**143.** As a result of UAL's violations of VA. CODE ANN. §§8.01-216.01 *et seq.*, the Commonwealth of Virginia has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 14:** **Violations of the Washington State Medicaid Fraud False Claims Act, RCW §§74.66 *et seq.*, Against UAL**

**144.** Washington State, by and through the Washington State Medicaid program and other State health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**145.** As a result of UAL's violations of RCW §74.66.020, the State of Washington State has been damaged to the extent of millions of dollars, exclusive of interest.

**Count 15:** **Violations of the District of Columbia Procurement Reform Amendment Act, D.C. CODE ANN. §§2-308.13 *et seq.*, Against UAL**

**146.** The District of Columbia, by and through the District of Columbia Medicaid program and other District health care programs, was unaware of UAL's wrongful and illegal practices and paid the claims submitted by health care providers and third party payers in connection therewith.

**147.** As a result of UAL's violations of D.C. CODE ANN. §2-308.14(a) and D.C. CODE ANN. §4-802(c), the District of Columbia has been damaged to the extent of millions of dollars, exclusive of interest.

# IX.
# PRAYERS FOR RELIEF

**148.** Realtors pray that this Court enter judgment:

**a.** On behalf of the United States and Relators, and against Defendants in Count 1, for all awards and damages required and permitted by the FCA.

**b.** On behalf of the United States and Relators, and against Defendants in Count 2, for all awards and damages required and permitted by the FCA.

**c.** On behalf of the States and Relators, and against Defendants on Counts 3 – 15:

1) To the STATE OF TEXAS, for all awards and damages required and permitted by the Texas Medicaid Fraud Prevention Act, Texas Human Resource Code §§36.001 *et seq.;*

2) To the STATE OF COLORADO, for all awards and damages required and permitted by the Colorado Medicaid False Claims Act, C.R.S. 25.5-4-305 *et seq.*;

3) To the STATE OF FLORIDA, for all awards and damages required and permitted by the Florida False Claims Act, FLA. STAT. Ch. 68.081 *et seq.*;

4) To the STATE OF GEORGIA, for all awards and damages required and permitted by the Georgia False Medicaid Claims Act, GA. CODE ANN. §§49-4-168.1 *et seq.*;

5) To the STATE OF ILLINOIS, for all awards and damages required and permitted by the Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. §175/1 *et seq.*;

6) To the STATE OF LOUISIANA, for all awards and damages required and permitted by the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. §§46:439.1 *et seq.*;

7) To the STATE OF MARYLAND, for all awards and damages required and permitted by the Maryland False Claims Act, MD. Health-General Code §2-601 – 2-611 *et seq.*;

8) To the STATE OF NEW JERSEY, for all awards and damages required and permitted by the New Jersey State False Claims Act, N.J. STAT. §2A:32C-1 *et seq.*;

9) To the STATE OF NORTH CAROLINA, for all awards and damages required and permitted by the North Carolina False Claims Act, N.C. GEN. STAT. §§1-605 – 1-618 *et seq.*;

10) To the STATE OF OKLAHOMA, for all awards and damages required and permitted by the Oklahoma Medicaid False Claims Act, OKLA. STAT. tit. 63 §§5053.1 *et seq.*;

11) To the COMMONWEALTH OF VIRGINIA, for all awards and damages required and permitted by the Virginia Fraud Against Taxpayers Act, Code of Virginia §8.01-216.1 *et seq.*;

12) To the STATE OF WASHINGTON, for all awards and damages required and permitted by the Washington State, RCW 74.09.210 *et seq.*;

13) To the DISTRICT OF COLUMBIA, for all awards and damages required and permitted by and the District of Columbia False Claims Act, D.C. CODE ANN., 2-308.14 *et seq.*;

14) To RELATORS MICHAEL VAUGHN, THEODORE FREEMAN, WILLIAM MCKENNA, and WESLEY STAFFORD:

    a.    A fair and reasonable amount allowed pursuant to the State FCAs;
    b.    Reimbursement for reasonable expenses which Relators incurred in connection with this action;

c. An award of statutory attorneys' fees and costs as provided by the applicable State FCAs; and
d. Such further relief as this Court deems equitable and just.

# X.
# JURY DEMAND

280. Relators request a trial by jury of all issues so triable.

**Respectfully submitted,**

| O'CONNELL & SOIFER LLP | HUTCHESON BOWERS LLP |
|---|---|
| */s/ Jan Soifer* | |
| Jan Soifer | Shannon Hutcheson |
| Texas Bar No. 18824530 | Texas Bar No. 00796708 |
| Patrick J. O'Connell | Allison Bowers |
| Texas Bar No. 15179900 | Texas Bar No. 24006170 |
| Maya Guerra Gamble | 1301 S. Mopac, Suite 430 |
| Texas Bar No. 24000194 | Austin, TX 78746 |
| Andrea D. Rose | (512) 777-4448 (phone) |
| Texas Bar No. 24081615 | (512) 777-4497 (fax) |
| 98 San Jacinto Blvd., Ste. 540 | shannon@hutchesonbowers.com |
| Austin, Texas 78701 | allison@hutchesonbowers.com |
| (512) 222-0444 (phone) | |
| (512) 222-0422 (fax) | |
| jsoifer@oconnellsoifer.com | **ATTORNEYS FOR RELATORS** |
| poconnell@oconnellsoifer.com | **MICHAEL VAUGHN, THEODORE** |
| mgamble@oconnellsoifer.com | **FREEMAN WESLEY STAFFORD, AND** |
| arose@oconnellsoifer.com | **WILLIAM MCKENNA** |

**CHAMBERLAIN MCHANEY**

David E. Chamberlain
Texas Bar No. 04059800
Catherine L. Kyle
Texas Bar No. 11778600
Tim Poteet
Texas Bar No. 16170300
301 Congress Ave., 21st Floor
Austin, Texas 78701
(512) 474-9124 (phone)
(512) 474-8582 (fax)
dchamberlain@chmc-law.com
ckyle@chmc-law.com
tpoteet@chmc-law.com