# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
October 16, 2018
Lyle W. Cayce
Clerk

No. 17-20389
4:13 cv 1081

United States of America, ex rel. MICHAEL VAUGHN; THEODORE FREEMAN; WILLIAM MCKENNA; WESLEY STAFFORD,

Plaintiffs - Appellees

v.

UNITED BIOLOGICS, L.L.C.,

Defendant - Appellant

United States Courts
Southern District of Texas
FILED
*November 07, 2018*
David J. Bradley, Clerk of Court

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before CLEMENT, HIGGINSON, and HO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The opinion issued September 7, 2018 is withdrawn by the panel, and the following is issued in its place:

The plaintiffs-relators initiated a *qui tam* action under the False Claims Act ("FCA"), Anti-Kickback Statute, and related state statutes, suing on behalf of the United States, the District of Columbia, and twelve states. The Government tarried in deciding whether to intervene, but eventually demurred, leaving the relators to go it alone. The relators persisted a little while longer on their own, but they grew tired of the litigation. They moved to voluntarily dismiss their case with prejudice as to themselves only, so that

No. 17-20389

their decision to quit would not hamstring the Government's efforts against the defendant elsewhere.

The district court consented to the relators' motion. That decision is challenged on appeal. For the reasons set forth, we affirm.

## I.

Plaintiffs-relators Michael Vaughn, Theodore Freeman, William McKenna, and Wesley Stafford (collectively, "Vaughn relators") are board-certified allergists licensed to practice medicine in Texas. Defendant United Biologics, L.L.C., ("United") owns and operates remote allergy centers that provide allergy screenings and treatments.[1] United contracted with non-allergist physicians, who permitted United to run its remote allergy centers in their offices or clinics and referred their patients to those services. The Vaughn relators alleged that United improperly billed government healthcare providers for unnecessary or unapproved medical treatments through these clinics. They also alleged that United paid illegal kickbacks to contracting physicians from subsequent Medicare reimbursements.[2]

The relators filed suit on April 16, 2013. The Government, which had been investigating United's practices in Atlanta since January 2013 (prior to the filing of the litigation and unbeknownst to the Vaughn relators), made its initial entry of appearance on May 1, 2013. The Government petitioned for, and received, five extensions to the initial 60-day deadline to make its

---

[1] The complaint initially included two other such companies, but they were dismissed by the court in response to the Vaughn relators' motion in September 2016.

[2] Record evidence suggests that the Vaughn relators had been concerned about these remote allergy centers for some time. Vaughn himself unsuccessfully petitioned the Texas Medical Board to review the practice, and allegedly threatened United's physicians. In response, United successfully filed a lawsuit against Vaughn, which resulted in an agreed permanent injunction impeding his efforts in 2011. The remaining Vaughn relators are board members of the trade association, Texas Allergy, Asthma and Immunology Society ("TAAIS"), who shared Vaughn's concerns and engaged in similar efforts. United also sued these relators, and was again successful in receiving a favorable agreed injunction in 2013.

No. 17-20389

intervention decision. *See* 31 U.S.C. § 3730(b)(2)–(4). The Government's memos in support of the extensions noted that the investigation was nationwide in scope, involved the cooperation of "Districts, States and various agencies," and required the gathering and review of a voluminous record. The court first granted the Government the discretion to reveal a redacted version of the complaint to United on February 9, 2014. The Government did not do so until after the court unsealed the case in April 2015.

In May 2014, while this case was still under seal, a similar *qui tam* claim was filed in the Northern District of Georgia, *United States and the State of Georgia, et al. ex rel. Nix v. United Biologics et al.*, 1:14-CV-1486. The relator, Terri Nix, sued on behalf of 21 states. The court partially unsealed the Vaughn relators' case to permit the Government to notify the court, named states, and Nix on August 11, 2014. According to United, the Government did not reveal the Nix lawsuit to the Vaughn relators until after its fifth extension, filed January 13, 2015.

In March 2015, Terri Nix and the Vaughn relators entered into a Sharing Agreement, whereby the parties would "share statutory relator share award(s), if any, . . . resulting from the *qui tam* actions [they had] separately filed." According to the Agreement, 85% would be allocated to the Vaughn relators and the remaining to Nix. The Agreement also noted that the parties "agree that all of the lawyers and law firms identified in this Agreement as representing [Nix and the Vaughn relators] have served and are serving as limited co-counsel for all of them, to the extent of the work they have performed and are continuing to perform to advance the common interests" of the relators. The parties further agreed to "work together and consult with each other" regarding strategy. The existence of this settlement agreement was revealed to the court and the Government at the first conference held on April 1, 2015.

No. 17-20389

Leading up to the April 1 conference, the Government moved for the case to be transferred to the Northern District of Georgia in light of the ongoing federal investigation there. The court rejected the petition at the subsequent hearing. It noted that the Vaughn relators had sued in Texas, and that this suit was the principal *qui tam* case. The Nix case was a "tagalong." During a colloquy, the court also expressed its frustration with the Government for taking so long to decide whether to intervene while leaving the Vaughn relators in the dark.

United filed a motion to dismiss for failing to state a claim on October 2015, soon after it discovered the lawsuit. The next month, the Government gave notice that it had decided not to intervene. The court then vacated the sealing order and required the relators to disclose "a list of every case, investigation, inquiry, or process of which they know involving the defendants or relating to this scheme." The court ultimately denied United's motion to dismiss on August 24, 2016. United then filed an answer on September 12, 2016. It also notified the district court that it had filed a motion to transfer venue in the Nix action on the grounds that this was the first-filed.

The first hearing involving United was a scheduling conference held on October 3, 2016. During the colloquy, the court decided to hold off conducting formal discovery. Instead, it required the parties to submit an exemplar contract United used with physicians, highlighting key portions and explaining how the agreements worked in hypotheticals. The ensuing order, entered October 4, 2016, required the submission of the contracts. It also indicated that "discovery is quashed" and that "[t]he parties will talk."

United submitted the modified contract with hypotheticals on October 11, 2016. It also submitted a motion requesting the district court order the Georgia *qui tam* case be transferred or enjoin the parties. The Vaughn relators filed their response to the hypotheticals one week later.

4

No. 17-20389

On October 24, 2016, the Vaughn relators notified opposing counsel that they had "decided to dismiss their case with prejudice as to them but without prejudice as to" the Government. Instead of notifying the relators whether it opposed the motion, United filed a motion for summary judgment the next day. Hours later, the Vaughn relators filed their motion to voluntarily dismiss the case with prejudice as to themselves but without prejudice to the Government. They also responded to the pending issues before the court: the motion to transfer and the motion for summary judgment.[3]

Their response to United's motion to transfer explained the reasons for their withdrawal. They noted that the Nix case was ongoing, which ensured that United would still be investigated. They also said that they "decided to voluntarily dismiss their case after being rebuffed in informal discovery, reviewing the transcript of the October 3, 2016 conference, and considering the difficulty of proceeding since the government has declined to intervene."

The Government filed a written consent to the dismissal, "provided the dismissal [was] without prejudice" as to it. United contested the motion. United argued that the court should grant its pending motions (including the summary judgment motion without discovery) first or, in the alternative, deny the motion altogether.

The court then held a hearing on this issue in January 2017. The Vaughn relators' counsel explained that the purpose of the suit was to make the Government aware of United's fraud, which it had achieved, but the Vaughn relators had tired of litigation without the Government's assistance. Counsel noted that his clients had "no intention of ever suing these people again." As

---

[3] The relators contested summary judgment in part by noting that discovery had not yet been conducted. They also filed a motion for continuance to allow for such discovery if the motion for dismissal were denied. The district court allowed for certain discovery on November 30, 2017.

5

No. 17-20389

evidence of his clients' good faith, counsel further explained that if the court agreed to its terms, the Vaughn relators would waive their claim to the Sharing Agreement.

At the court's request, the Government was summoned to the hearing. The Government explained that it understood the Vaughn relators to have chosen to "step back and then allow for the relators in the Northern District of Georgia to go forward with their action." When pressed by the court to give a reason "why it[] [was] not willing to jump into this" case, the Government replied that "it's typical that the United States does not state a specific reason why." Such a specific reason "could arguably influence any sort of litigation that comes after." Instead, the Government contended that "[w]e have, by granting consent, that shows [sic] by inference that there has been some thoughtful procedure into the decision to consent." The Government did note that it had not yet decided whether to intervene in the Georgia case, however.

Although the court was skeptical, it ultimately seemed to affirm the Government's reasoning, noting that "[t]he proposal here is if the United States has permitted two indictments to persist for seven years collectively, overlapping each other for three years, and has decided to pick one and not the other and then turn it over to somebody else to try. . . . I'm inferring the choice." Responding to United's concerns, the court affirmed that it was "absolutely clear" the Government simply decided to pursue the same claims against the defendant in Georgia.

On March 31, 2017, the court handed down an order "dismiss[ing the case] with prejudice as to the relators." On April 14, 2017, United filed a Rule 59 motion for clarification, seeking to include the Government and Nix in the dismissal, or require Nix to join this case as a condition of dismissal. The court denied this motion in a "Clarification" order on April 17, 2017, stating, "This

No. 17-20389

case was dismissed with prejudice as to Michael Vaughn, Theodore Freeman, William McKenna, and Wesley Stafford."

United then filed a second Rule 59 motion on April 28, 2017, based on new evidence that the Government had altered its course in the Nix litigation in light of the dismissal of the Vaughn relators. United also filed a motion for fees and costs. On May 11, 2017, the court denied the second motion to amend its order, denied the request for fees, and ordered Vaughn relators to pay court costs. It noted that "[t]he time for the parties to appeal runs from the entry of this order." United timely appealed.

II.

United raises three challenges on appeal: (1) the court erred when it dismissed the relators with prejudice and the Government without prejudice; (2) the Government's and district court's consent to the relators' motion to dismiss failed to satisfy FCA requirements; and (3) the district court erred when it granted the relators' voluntary motion to dismiss under Rule 41(a)(2). We review resolution of a voluntary motion to dismiss for abuse of discretion, *Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984, 986 (5th Cir. 1989), while pure legal questions are reviewed de novo, *Trient Partners I Ltd. v. Blockbuster Entm't Inc.*, 83 F.3d 704, 708 (5th Cir. 1996). Applying the relevant standards, all three fail.

A.

We begin with a question that has not yet been answered by this court—namely, whether the non-intervening Government may be dismissed without prejudice when relators voluntarily dismiss themselves with prejudice. Its answer implicates the fundamental relationship between a relator and the Government in *qui tam* actions, so we begin with first principles and build from there. For the reasons set forth, we conclude that because the Government never intervened in the case, and therefore never became a "party" to the

7

litigation, no dismissal as to the Government would be appropriate. As for whether and to what extent the Government is bound by the *qui tam* relators' voluntary decision to quit the case, that is a question to be answered by the court in the Georgia litigation.

The FCA prohibits individuals from "present[ing], or caus[ing] to be presented, . . . a false or fraudulent claim for payment or approval" to a Government officer or employee. 31 U.S.C. § 3729(a)(1). Although the law generally does not permit an individual to file a lawsuit to remedy harm suffered by others, the FCA creates an exception. The statute permits "a person" acting on his own behalf and "for the United States Government"—i.e., the relator—to remedy certain frauds. *Id.* § 3730(b)(1). The individual brings his claim "in the name of the Government." *Id.* As we have noted, this empowerment served the statute's original purpose: "to stem widespread fraud by private Union Army suppliers in Civil War defense contracts." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 184 (5th Cir. 2009).

Once the relator files suit, the Government must investigate the matter and determine whether it will intervene and take "primary responsibility for prosecuting the action," or so decline. 31 U.S.C. § 3730(b)(4); 3730(c)(1). If the Government declines to intervene, then "the person who initiated the action shall have the right to conduct the action." *Id.* § 3730(c)(3). In this capacity, the relator stands in the place of the Government, representing its interests. *Cf. Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1126–27 (9th Cir. 2007) (requiring the relators to have counsel because they are not only "prosecuting . . . their 'own case' but also representing the United States").

Even when the Government declines to intervene, it remains a distinct entity in the *qui tam* litigation with protected interests. This fact is established by the FCA itself, which affords the Government certain rights in the litigation regardless of its decision not to intervene. For example, it is to be supplied with

No. 17-20389

"all pleadings filed in the action" and "copies of all deposition transcripts." 31 U.S.C. § 3730(c)(3). Moreover, the Government may stay discovery if it can show that the litigation is obstructing a separate investigation or prosecution. *Id.* § 3730(c)(4). The Government still receives at least 70% of the remedy award. *Id.* § 3730(d)(2). And the Government must still give its consent before the relator dismisses the action. *Id.* § 3730(b)(1).

Yet courts have consistently held that a non-intervening Government does not stand as an independent party in a lawsuit. Instead, we have categorized the non-intervening Government as a mere "passive beneficiary of the relator's efforts." *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997). Along the same lines, the Supreme Court has explained that a non-intervening Government is a mere "real party in interest," not a formal "party," for the purposes of the appellate filing deadline. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934–36 (2009). We have also described a non-intervening state government as "merely chimerical," lacking "control over the litigation process." *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 290–94 (5th Cir. 1999) (holding that Eleventh Amendment immunity was not waived on this basis).

So although the non-intervening Government has both an independent and derivative presence in a *qui tam* lawsuit regardless of whether it chooses to intervene, treating the non-intervening Government as a "party" is inappropriate. "To hold otherwise would render the intervention provisions of the FCA superfluous, as there would be no reason for the United States to intervene in an action in which it is already a party." *Eisenstein*, 556 U.S. at 933. The district court was correct not to dismiss the Government (either with prejudice or without prejudice), because the Government was never a "party" to begin with.

No. 17-20389

But whether the Government is a party in this litigation should not be conflated with the separate question of whether the Government should be bound by the judgment in this case. On the one hand, it is well-settled that a final judgment on the merits of a relator's claim will have a binding effect on even the non-intervening Government. *See Eisenstein*, 556 U.S. at 933–34, 936 (noting that "the United States is bound by the judgment in all FCA actions regardless of its participation in the case" based on nonparty claim preclusion principles (citing *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008))); *United Sates ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ("If [the relator] had litigated a *qui tam* action to the gills [by himself] and lost, neither another relator nor the United States could start afresh."). Conversely, when the case's outcome is decided by the relator's voluntary decision to quit, courts tend not to bind the Government to that decision automatically. *See Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015) ("Why would Congress want the abandonment of an earlier suit [not decided on the merits] to bar a later potentially successful suit that might result in a large recovery for the Government?"); *Youssef v. Tishman Constr. Corp.*, 744 F.3d 821, 826 (2d Cir. 2014) ("[N]othing in the False Claims Act requires that a voluntary dismissal be accorded *res judicata* effect."); *Searcy*, 117 F.3d at 160 (holding that the FCA authorizes the non-intervening Government to "stand on the sidelines and veto a voluntary settlement"); *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1397 (9th Cir. 1992) (noting it would be inappropriate "[t]o hold that the government's initial decision not to take over the *qui tam* action is the equivalent of its consent to a voluntary dismissal of a defendant with prejudice").

And, relevant to the matter at hand, this court has also found that even when the relator's case loses on a motion to dismiss, the Government should

10

No. 17-20389

not be bound if the dismissal is for reasons not tied to the underlying legal merit. Specifically, in *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, we concluded that it was an abuse of discretion for the district court to dismiss the Government with prejudice based on the relator's dismissal for failing to adequately plead its cause of action. 417 F.3d 450, 453, 456 (5th Cir. 2005). In support, we noted that our holding "guard[ed] against concerns previously raised . . . that the FCA allows a relator . . . to make sweeping allegations that, while true, he is unable to effectively litigate, but which nonetheless bind the government, via *res judicata*, and prevent it from suing over those concerns at a later date when more information is available." *Id.* at 455 (internal quotation omitted). We explained that the non-intervening Government should not be bound by the fate of an incompetent relator, lest it be forced to intervene in every action.[4] *Id.*; *see United States ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 378 (5th Cir. 2016) (affirming the dismissal of a relator with prejudice due to the malfeasance of his lawyer in part because the Government had been dismissed without prejudice).

In any event, the district court in the Georgia litigation must decide whether the Government is bound under the claim preclusion principles described above by the judgment in this case. *See, e.g., In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (holding that summary judgment for the defendant in relator's FCA suit was *res judicata* as to the Government); *cf. United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 167 (2d Cir. 2013)

---

[4] In *Williams*, we modified the district court's order to provide that the Government was dismissed without prejudice. But our dismissal of the United States in that case, which was decided before the Supreme Court's *Eisenstein* decision, does not change the fact that a dismissal of any kind is inappropriate as to the non-intervening Government. The focus in *Williams*—like the focus of the parties in this case—was on whether the dismissal of the United States should be with prejudice or without prejudice. *Williams*, 417 F.3d at 455–56. The appropriateness of the dismissal itself was not addressed.

(concluding that dismissal due to ethical violations by the relators "did not foreclose the *government* (or, for that matter, a different relator) from bringing suit"). United's counterarguments from case law and the FCA are unpersuasive.

United tries to distinguish the present case from *Williams* because the relator's claim was dismissed at the pleading stage with little opportunity for the Government to participate. *See, e.g.*, *Williams*, 417 F.3d at 455. But this was only one aspect of the court's reasoning, which, for reasons just stated, squarely supports the district court's order here. Moreover, this case also had not gone far when the relators petitioned to get out: no formal discovery had been conducted, nor had there been a summary judgment ruling when the relators filed their Rule 41(a)(2) motion.

United also cites *Eisenstein*'s general statement that the "United States is bound by the judgment in all FCA actions regardless of its participation in the case." *Eisenstein*, 556 U.S. at 936. Notably, the statement was followed by a citation to a case discussing claim preclusion. *Id.* Accordingly, this general principle regarding the binding effect of a final merits determination on the Government is perfectly consonant with an enforcement of the district court's ruling here. Moreover, in light of *Eisenstein*'s narrow holding—that the Government was not a "party" for the purposes of Federal Rule of Appellate Procedure 4(a)(1)(B), *id.*—it would be inappropriate to interpret this passing observation so broadly.

Last, relying on the *expressio unius* canon, United argues that FCA does not expressly permit relators "to seek a Rule 41(a)(2) voluntary dismissal . . . *with prejudice* as to their case but *without prejudice* as to the Government." But this canon "must be applied with great caution" and generally requires a specific, enumerated list of options. Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 107–19 (2012). The complex web of

No. 17-20389

disjointed FCA subsections at issue here does not offer the correct context. More fundamentally, as noted above, there is simply nothing untoward about the district court's refusal to dismiss the Government with prejudice when the Government never intervened in—and hence never became a "party" to—this litigation.

B.

United next challenges the Government's and district court's consent to the relators' voluntary dismissal insofar as they (1) were not written down and (2) provided an inadequate explanation. Both fail.

1.

United contends that a written explanation for the Government's and the court's consent is required by both the text of the FCA and the provision's underlying policy concern—namely, to ensure that the dismissal is in the public interest. We disagree.

The relevant FCA provision is found at 31 U.S.C. § 3730(b)(1), which states, "The [FCA] action [brought by the relator] may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." United argues that the modifier "written" applies both to "consent" and to "reasons for consenting," so it was entitled to a written explanation for the consent the relators' motion received.

But this is an incorrect and awkward reading of the text—one that has never been promoted by courts. The correct and more natural one is to interpret "written consent to the dismissal" and "their reasons for consenting" as two separate requirements. There are occasions, to be sure, in which a single adjective can be used to modify a series of subsequent nouns or verbs. But this principle of interpretation, known as the "Series-Qualifier Canon," applies only when context clearly establishes that it is intended. *Reading Law* at 147–51. This is usually the case when the nouns and verbs are listed without any

13

intervening modifiers. So for example, in "unreasonable searches and seizures," the adjective "unreasonable" is clearly meant to modify both "searches" and "seizures." The typical way to break the series is to insert a determiner. *Reading Law* at 148. Here, the possessive determiner, "their," is attached to the second noun in the list, "reasons." This makes clear that "written" was not intended to modify both "consent" and "reasons."

Congress has clearly communicated its intent through the text of the statute. We will not refer to other policy considerations for further guidance. Accordingly, we discern no basis for United's insistence that it is entitled to written explanation for consent under § 3730(b)(1).

2.

United also baldly asserts that it was entitled to a more thorough explanation for the Government's or the district court's reasons for consenting to the dismissal. Here again, we disagree.

The argument, made on the basis of § 3730(b)(1), fails because it is unsupported by the text and contrary to its purpose. Of course, as a general matter, a sufficient "statement of reasons is one of the handmaidens of judging," which assists our review. *See Schwarz v. Folloder*, 767 F.2d 125, 133 (5th Cir. 1985). Nevertheless, the detail required varies with context. And this court, as well as other circuits, has concluded that the Government retains *absolute* discretion to consent (or withhold consent) to a dismissal under § 3730(b)(1)—even when it does not intervene in the litigation. *Searcy*, 117 F.3d at 158, 160; *see also United States ex rel. Michaels v. Agape Senior Comm., Inc.*, 848 F.3d 330, 339 (4th Cir. 2017) ("[Section] 3730(b)(1) does not overtly require the Government to satisfy any standard or make any showing reviewable by the court."); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 336, 340 (6th Cir. 2000). In light of that authority, we decline to impose a high requirement on the justifying articulation—either for the Government itself or

No. 17-20389

the district court's review of that decision. *Cf. Hill v. Schilling*, 593 F. App'x 330, 334 (5th Cir. 2014) (no explanation required for judge's decision to recuse himself).

Here, the Vaughn relators requested dismissal with prejudice because they were tired of litigating the action without the Government's intervention and were satisfied that the other *qui tam* case against United was sufficient to handle their concerns. The court held a hearing to discuss the matter, and required the Government to attend. The Government explained that its interests were not harmed by the Vaughn relators' decision, noting in part the ongoing litigation in Georgia. It explained that a more specific response would compromise its litigation strategy.

While the court was frustrated by the lack of detail in this response, it is clear that the court—and, notably, the defendants—understood the Government's reasoning: it was consenting to the dismissal of these relators because of the ongoing *qui tam* litigation elsewhere. The district court's order, by dismissing only the relators with prejudice, clearly reflects an ultimate acceptance of the Government's explanation.

In short, there is enough in the record here to discern an adequate basis for the Government's and district court's consent to the relators' dismissal. Even if we were to require some baseline explanation requirement, this would meet it.

## C.

Last, United challenges the court's grant of the relators' voluntary motion to dismiss as an abuse of discretion. For the reasons set forth, we discern none.

If a plaintiff moves to voluntarily dismiss after a summary judgment motion has been filed, it must first receive the court's consent. Fed. R. Civ. P. 41(a)(2). This court has explained that, "as a general rule, motions for

15

No. 17-20389

voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002). And the mere fact that the plaintiff "may gain a tactical advantage by dismissing its suit without prejudice and refiling in another forum is not sufficient legal prejudice." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 299 (5th Cir. 2016) (internal quotation omitted). The "purpose of the grant of discretion under Rule 41(a)(2) . . . is primarily to prevent voluntary dismissals which unfairly affect the other side[.]" 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2364 (3d ed. 2018 Update) (internal quotation omitted). Absent such a showing or other "evidence of abuse by the movant," the motion should be granted. *Elbaor*, 279 F.3d at 317.

United attempts to show that such abuse occurred here by citing various factors that this court has found persuasive in finding plain prejudice, but they fail to demonstrate an abuse of discretion. First, United argues that the Vaughn relators were merely seeking to avoid an imminent adverse result on the merits. *Cf. In re FEMA Trailer Formaldehyde Prods. Liability Litig.*, 628 F.3d 157, 162 (5th Cir. 2010) (noting that a "typical example[]" of prejudice occurs when the motion is a means of "avoid[ing] an imminent adverse ruling").

But we discern no evidence of this secret intent. Notably, although United had filed a motion for summary judgment just before, no formal discovery had been conducted at the time of the relators' motion except for the court's request for a sample contract. And, notably, the most recent disposition had been in the relators' favor—the court's denial of United's motion to dismiss on the pleadings. It is unlikely that the relators filed their motion for dismissal out of fear of an adverse result. *Cf. Robles v. Atl. Sounding Co., Inc.*, 77 F. App'x 274, 275 (5th Cir. 2003) (noting arguments based on timing usually involve

No. 17-20389

cases "where the movant suffered an adverse legal decision *prior* to moving for voluntary dismissal.")

United also contends significant resources have been expended in this *qui tam* lawsuit. *Cf. Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir. 1991) ("When a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort, then a court may, in its discretion, refuse to grant a voluntary dismissal."). But those instances in which this court has justified the denial of a voluntary motion to dismiss on this basis, the parties had engaged in significantly more litigation than here at the time of filing. *E.g., Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360–61 (5th Cir. 1990) (motion filed after ten months of litigation, numerous hearings, significant discovery, summary judgment grant in one defendant's favor, and scheduled jury trial for remaining defendants); *see also United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003). By contrast, when the Vaughn relators filed their motion for voluntary dismissal, the parties had conducted no discovery, and only weeks had passed since United filed its answer. In other words, the litigation had just gotten passed the pleading stage. And only one hearing involving United had occurred—a scheduling conference.

United's arguments to the contrary are unpersuasive. It is true that the case had been "on file" for a number of years, but the case was largely under seal during that time while the Government conducted its investigation. Whatever burdens imposed by the Government's actions, they are not the sort of "litigation" expenses for which this court has held relators responsible. Nor is United's reference to later burdens it suffered based on the relators' response to *its own* motion for summary judgment persuasive.

United also argues that the Vaughn relators' motion risks depriving United of a legal defense. This court has consistently found that, when a

17

No. 17-20389

voluntary dismissal might strip the defendant of a "viable . . . defense" in the first action that it might not be able to raise if the plaintiff were to bring the action again, the motion for dismissal must be denied. *See Elbaor*, 279 F.3d at 317–19 (finding abuse of discretion when defendant had a non-frivolous statute of limitations defense); *see also Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510–14 (5th Cir. 2007) (defense under Texas choice-of-law rules); *Ikospentakis v. Thalassic Steamship Agency*, 915 F.2d 176, 179 (5th Cir. 1990) (forum non conveniens defense).

But these cases all deal with distinguishable circumstances. In each case, the court was concerned that the plaintiff was using a voluntary dismissal to escape from a potentially meritorious defense by filing in a different venue or jurisdiction that avoided that defense. Here, the Vaughn relators sought to dismiss themselves *with prejudice*. In other words, it cannot be claimed that the relators were using the motion as a means of self-preserving gamesmanship.

United argues that the Vaughn relators are dismissing themselves from this litigation in order to thwart United's defense in the Georgia litigation involving an entirely different relator. But United's invocation of this basis for establishing plain prejudice is inapt and unpersuasive. After all, at the time of the relators' motion, the Government had not yet intervened in Georgia. Moreover, the Vaughn relators are not participating in that litigation, and they severed their settlement agreement with the Georgia relator as a condition of their dismissal. The Vaughn relators have assured this court that they will not receive any benefit from the Nix litigation—an assurance that we will credit here, and that we expect the parties in Nix will no doubt enforce as they deem

18

No. 17-20389

appropriate. We decline to overturn the district court's discretion on this basis.[5]

In sum, United has failed to articulate the sort of plain prejudice required to prove the district court abused its discretion.

III.

AFFIRMED.

---

[5] United also seems to imply that the motion was made in bad faith because the relators share the same counsel and that the TAAIS may still receive some recovery if the Georgia lawsuit is meritorious. It asserts that the Vaughn relators are trying to "have their cake and eat it too." They provide no legal basis for this assertion, except two cases that are factually distinct from this case. First, in *In re FEMA*, this court *affirmed* a district court's discretion to deny a voluntary dismissal when the plaintiffs sought to withdraw temporarily "from a bellwether trial and then sit[] back to await the outcome of another plaintiff's experience." 628 F.3d at 163. Even if this case provided a basis to *overturn* the district court, the Vaughn relators dismissed themselves with prejudice. Second, *Federal Recovery Services, Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) concerned deceptive acts of an attorney to cure jurisdictional defects in a single *qui tam* action. We fail to see a persuasive application to the circumstances here.